Joshua Black, #032241
Yuzhuo Li, #036321
Law Office of Joshua Black, PLC
2999 N 44th St, Suite 308
Phoenix, AZ 85018
(623) 738-2225 (p) • (623) 670-5934 (f)
josh@azemploymentlawyer.com
jodi@azemploymentlawyer.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Antonio Moreno**, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> **Citicorp Credit Services, Inc.,** a corporation doing business in Arizona, <br><br> Defendant. | No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL REQUESTED** |

Plaintiff **Antonio Moreno**, ("**Plaintiff**" or "**Moreno**"), by and through undersigned counsel, hereby alleges as follows:

**NATURE OF ACTION**

1. This is an action under Title VII of the Civil Rights Act 1964 ("Title VII"), Arizona Civil Rights Act ("ACRA"), and Arizona Revised Statues ("ARS") against Citigroup Inc. ("Citi") for its unlawful employment practices of discrimination based on national origin; disparate treatment and retaliation; and the Americans with Disabilities Act ("ADA") based on

1

denial of reasonable accommodation; and the Family Medical Leave Act ("FMLA") based on denial of medical leave requests.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331.

3. The unlawful employment actions alleged herein were committed in whole or in part within the jurisdiction of the United States District Court for the District of Arizona.

4. Venue is proper in this District under 28 U.S.C. § § 1391 (b) and (c) because all or a substantial part of the acts or omissions giving rise to the claims occurred in the state of Arizona. Plaintiff was employed by Defendant in this District.

## PROCEDURE

5. Plaintiff has satisfied all procedural requirements for commencing this action.

6. On November 20, 2019, Plaintiff filed a charge of discrimination with the Arizona Attorney General's Office, Civil Rights Division, and the Equal Employment Opportunity Commission against Defendant for its unlawful employment practices.

7. On February 25, 2021, the Equal Employment Opportunity Commission issued a Notice of Right to Sue about Plaintiff's charge.

8. Plaintiff has filed this lawsuit within 90 days of the date he received the Right-to-Sue letter.

## PARTIES

9. Plaintiff is a United States Citizen who resides in Arizona.

10. **Defendant, Citigroup Inc. ("Citi")**, is a registered corporation doing business in Arizona. Specifically, all of Defendant's unlawful employment practices alleged by Plaintiff occurred in Arizona.

11. At all relevant times, Plaintiff was an "employee" of Defendant as defined in the Title VII, ACRA, ARS and ADA provisions.

12. At all relevant times, Defendant was the "employer" of Plaintiff as defined in the Title VII, ACRA, ARS and ADA provisions.

13. At all relevant times, Defendant has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made, or business done is greater than $500,000.

## STATEMENT OF FACTS

14. Moreno is Hispanic.

15. Moreno was physically disabled determined within the meaning of ADA.

16. Due to his disability conditions, Moreno was unable to drive himself.

17. Plaintiff began working at Citi on or around January 19, 2004. During his employment with Citi, he held various jobs.

18. Moreno's last position at Citi was a Customer Specialist position under the supervision of Manager Glenda Elias ("Elias").

19. Before being transitioned to the unit of Elias, he worked under the supervision of the Manager Javier Perez.

## TERMINATION OF EMPLOYMENT AND BENEFITS

20. On or about Mid-February of 2018, while waiting to fill a prescription for his medical conditions, Moreno was told that his medical insurance has been terminated.

**21.** Moreno contacted Citi Benefits immediately and was advised that all his benefits, including his medical insurance, life insurance, short-term disability coverages and long-term disability coverage has been terminated.

**22.** Moreno was also advised that Citi reported termination of employment although he was not aware of that situation.

**23.** In a letter dated February 16, 2018, Metlife denied Moreno's request for medical leave advised him " you have not worked at least 1260 hours in the past 12 months for your employer prior to the leave" although he had worked enough hours for several years.

**24.** On or about February 26, 2018, Moreno was sent a confirmation letter confirming that after February 5, 2018, he will no longer have insurance.

**25.** On or about March 16, 2018, Moreno was sent a letter simply stating that his insurance and other benefits have been reinstated – but no reason was given as to the prior interruption.

**26.** Due to the prior interruption, Moreno could not timely seek medical services and his medical and disability conditions worsened.

**27.** Although Moreno's insurance and benefits were reinstated, he received a letter advised that his medical leave requested through Metlife has been denied and his short-term disability pay has been stopped on the basis that he did not seek additional medical services and prescriptions.

**28.** Moreno tried to seek help from Citi in order to resolve the denial of medical leave and disability pay but did not avail.

## DENIAL OF REASONABLE ACCOMODATIONS

29. On or about March 13, 2018, Moreno sent his Manager, Javier Perez, an ADA form requesting reasonable accommodations for his disability conditions.

30. Due to his disability conditions, Moreno requested a remote position – which was normally granted for customer service representatives at Citi.

31. Moreno requested paid leave of absence until a remote position was available.

32. On or about mid-April of 2018, Citi HR generalist contacted Moreno regarding his ADA form and advised him that she would be in communication with Jessica Burns.

33. Later that week Jessica Burns called Moreno stating that he had only two options in order to remain employed – both the options involve a demotion.

34. First, Moreno may choose to continue working at that on-site position until a training for a remote position is available. Second, Moreno may choose to take unpaid leave of absence until a training for a remote position is available.

35. Because Moreno was unable to travel between home and work by himself, he had no options but to be demoted and taking unpaid leave of absence for an indefinite period.

36. After being unpaid for approximately five months, on or about September 13, 2018, Moreno received an email from his new manager Elias directed him to report to the site on September 18, 2018, to begin training.

## RETALIATION FOR SEEKING EMPLOYMENT BENEFITS

37. Moreno reported to the site as directed but was denied access to the building by the Department Manager Rene Grajeda ("Grajeda").

38. According to Grajeda, Moreno had no access privileges to the building because his employment has been terminated.

**39.**     Grajeda stated Moreno's employment has been terminated due to the denial of his medical leave request.

**40.**     Grajeda refused to let Moreno in despite his explanation.

**41.**     After a couple of hours, Elias finally came down to the lobby and let Moreno in so that he could began training.

**42.**     Moreno successfully completed the training.

**43.**     The participants of the training all received the credentials and system access for remote work except for Moreno.

**44.**     Moreno was advised to contact *Citi Help Line* for system access technical support.

**45.**     During the call with the help line, Moreno wad advised that he was previously terminated and rehired.

## DISCRIMINATED BASED ON NATIONAL ORIGIN

**46.**     After being transitioned to the Unit of Elias, Moreno worked in a Hispanic-speaking and bilingual customer service specialist team.

**47.**     In a letter dated February 13, 2019, Jessica Stewart advised that the company has made the decision to get rid of their Spanish-speaking representatives from all their Membership Services Desk from Costco warehouse.

**48.**     Besides, the Spanish-speaking team continued to be subjected to discriminatory treatment as compared to the Caucasian teams.

**49.**     Citi executed restrictive management method for the Spanish-speaking team as compared to the Caucasian teams by Elias.

50. On or about March 5, 2019, Elias set a lunch break schedule for the Spanish-speaking representatives, which meant that they had to take a reduced lunch break at a time stipulated by her.

51. The lunch break schedule restriction has not been applied to the Caucasian teams.

52. Elias stated the lunch break schedule restriction was to make sure there were always someone around for serving customers.

53. Elias's reason for lunch break schedule restriction was not reasonable – the Spanish-speaking team was massively overstaffed compared to the Caucasian teams.

54. Additionally, on or around May 25, 2019, Elias advised that effective immediately she restricted the entry of all requests for time off for Friday, Saturday, and Sunday into the Citi system.

55. Elias required that all her team submit any time off request to her directly and she would have control over the request due to business needs.

56. All Caucasian teams make requests through the Citi system where time off requests are approved fairly and flexibly.

57. Instead, Elias subjected requests from Spanish-speaking representatives to her personal biases and prejudices.

58. Even worse, on or around June 19, 2019, Elias directed the team not to submit any Voluntary Time Off and delete any pending permissions.

59. Again, all Caucasian teams were not subjected to this unreasonable restriction.

**RETALIATION FOR FILING COMPLAINT**

60. In or about April to June of 2019, Moreno made inquired about and requested unpaid leave of absence but was denied by Elias.

61. In or about May 2019, Elias threatened to issue a Performance Improvement Plan ("PIP") to Moreno if he insisted on making that request through the Citi system.

62. In or about July of 2019, Moreno file an internal complaint against Elias based on discriminatory treatment of himself as a Spanish-speaking representative.

63. In July of 2019, Elias issued the PIP to Moreno and other discriminatory treatment persisted.

64. In the PIP, Elias misrepresented Moreno's total use of unplanned time among other facts.

65. In or about July 28, 2020, Elias updated the PIP with more restrictive requirements.

## COUNT ONE
## DISCRIMINATION ON THE BASIS OF RACE

66. Plaintiff incorporates each and every allegation above as fully set forth herein.

67. Defendant addressed the incident unfairly due to its discrimination against Plaintiff on the basis of his race.

68. The acts committed by the Bashas' were unlawful employment practices of discrimination in violation of Title VII, 42 U.S.C. § 2000e and A.R.S. § 41-1463.

69. Plaintiff has suffered from Defendant's discrimination on basis of his race as a Hispanic.

70. Plaintiff has experienced unfair and disparate treatment in comparison to other non-Hispanic employees of Defendant.

71. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT TWO
## DISPARATE TREATMENT UNDER TITLE VII

72. Plaintiff incorporates each and every allegation above as fully set forth herein.

73. Defendant addressed several incidents in question unfairly due to its discrimination against Plaintiff on the basis of his race.

74. Defendant treated Plaintiff less favorably than other similarly situated individuals.

75. As a direct and proximate result of Bashas' disparate treatment, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT THREE
## RETALIATION UNDER TITLE VII

76. Plaintiff incorporates each and every allegation above as fully set forth herein.

77. In reporting Defendant's discriminatory treatment as to Hispanic-speaking workers, Plaintiff engaged in protected activity.

78. After Plaintiff reported the discriminatory practices to Defendant, Defendant retaliated against him by giving him a Performance Improvement Plan with misrepresentations of facts.

79. The Performance Improvement Plan was issued and updated within the same month as Plaintiff's report.

80. There is a causal connection established by time relevance between Plaintiff's protected activity and the adverse actions taken by Defendant.

81. As a direct and proximate result of Defendant's purposeful retaliation, Flores has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT FIVE
## DENIAL OF REASONABLE ACCOMODATION FOR DISABLITY

82. Plaintiff incorporates each and every allegation above as fully set forth herein.

83. Plaintiff is a disabled person within the meaning of the ADA.

84. Plaintiff is a qualified employee within the meaning of the ADA, that is, with reasonable accommodation, Plaintiff would be able to perform the essential functions of the given position.

85. Plaintiff was not provided reasonable accommodation despite that he gave notice of his disability.

86. Plaintiff could not hold the position due to Defendant's failure to provide him reasonable accommodation.

87. Plaintiff meets all elements for an ADA claim.

## COUNT SIX
## DENIAL OF REQUESTS FOR LEAVE UNDER FMLA

88. Plaintiff incorporates each and every allegation above as fully set forth herein.

89. Plaintiff exercised his right to use FMLA leave a qualified employee.

90. Plaintiff's request for FMLA leave was wrongfully denied due to Defendant's misrepresentation of facts.

91. Defendant further retaliated against Plaintiff for requesting FMLA leave.

## DAMAGES

92. As a direct and proximate result of Defendant violations of Plaintiff's protected rights in each of the above-mentioned claims for relief, Plaintiff suffered and continues to suffer from emotional distress, physical illness, medical expenses, loss of pay, legal fees, etc. Plaintiff is entitled to compensatory damages to make him whole.

93. As set out above, Defendant's actions demonstrated a malicE to harm Plaintiff and a reckless disregard for the protected rights and well-being of him. Thus, Plaintiff is entitled to punitive damages.

94. Plaintiff is entitled legal fees and costs of this action and previous charge with the Equal Employment Opportunity Commission, including attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k);

**WHEREFORE**, Plaintiff Moreno respectfully prays for judgment against Defendant Bashas', and asks this Court to:

(A) Award Plaintiff compensatory damages for his emotional distress, physical illness, medical expenses, loss of pay and any other appropriate relief to make Plaintiff whole and compensate him for Defendant's adverse employment actions;

(B) Award Plaintiff legal fees and costs of this action and previous charge with the Equal Employment Opportunity Commission, including attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k);

(C) Award Plaintiff punitive damages; and

(D) Award Plaintiff other legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

**RESPECTFULLY SUBMITTED** this 24th day of May 2021.

*Law Office of Joshua Black, PLC*

By: /s/ *Joshua C. Black*
Joshua C. Black
2999 N 44th St, Ste 308
Phoenix, AZ 85018
*Attorneys for Plaintiff*